IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| N. N.,<br>Plaintiff | §<br>§<br>§ | CIVIL ACTION NO.: |
| VS. | §<br>§<br>§ | 19-594 |
| STARLITE RECOVERY CENTER,<br>LLC,<br>Defendant | §<br>§<br>§<br>§<br>§ | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

To the Honorable Court:  Comes now, N. N., who files his original complaint and jury demand complaining of STARLITE RECOVERY CENTER, LLC.

**"…whatsoever I shall see or hear in the course of my profession, as well as outside my profession in my intercourse with men, if it be what should not be published abroad, I will never divulge, holding such things to be holy secrets."**

**Attributed to Hippocrates, 460 BCE – 375 BCE.**

### A.  Nature of Action

1.      This is a common law tort action seeking to recover compensatory and exemplary damages for tortious invasion of privacy, negligence, negligence *per se*, gross negligence, breach of an implied agreement to maintain confidentiality, tortious interference, intentional infliction of emotional distress, and fraud.

### B.  Parties

2.      Plaintiff is a resident and a citizen of the State of Texas.

3.     Defendant STARLITE RECOVERY CENTER, LLC., (SRC) is a Delaware limited liability company doing business in the State of Texas.  Its registered agent for service of process is C T Corporation System, which may be found at 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

**C.  Jurisdiction and Venue.**

4.     This court has diversity jurisdiction pursuant to 28 USC, §1332.  The court has supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 USC, §1367.

5.     A substantial part of the acts and omissions made the basis of Plaintiff's claims occurred in Kerr County, Texas, which is situated in the Western District of Texas.  Accordingly, venue is proper in the San Antonio Division of the Western District of Texas pursuant to 28 USC, §1391.

**D.  Relevant Facts.**

6.     On or about December 22, 2018 Plaintiff checked into SRC seeking treatment for substance abuse and detoxification. He emphasized the importance of confidentiality to Defendant's intake staff, particularly with respect to his employer, a Texas Independent School District.   He explained to Defendant's staff that his job with the ISD could be in jeopardy, if the school district learned that he was being treated for substance abuse and detoxification.

7.     Defendant's staff, notably Whitney (Last Name Unknown), reassured Plaintiff that SRC was well-aware of the importance of confidentiality; that it had treated many patients with similar concerns and possessed considerable institutional expertise in maintaining strict confidentiality of patient medical records and conditions.

8.      In fact, Defendant's document, "**DETOX ORIENTATION** INFORMED CONSENT WITH IN THE 24-HOUR PERIOD ADMISSION TO TREATMENT" [sic] stated in pertinent part as follows:

> "All information disclosed within these sessions is *strictly confidential* and may not be revealed too [sic] anyone outside the facility staff without the written permission of the client or the client's family.  The only exceptions are when the disclosure is required or permitted by law.  ....  In the event of audits and evaluations due to licensing and accreditation process all auditors will be required to sign a Confidentiality Pledge for Drug Records.  Tours of the facility may be given during my stay; however, I understand that all persons will have signed a Confidentiality Statement upon entering Starlite.  An accounting log will be in place for all disclosures made with a client's written disclosure."[A]

9.      Sadly, Starlite's reassurance was false. Both Whitney (LNU) and Cassandra Carson, LVN, emailed multiple documents to administrative personnel at the ISD, which indicated that Plaintiff was a patient in a "recovery center," and that explicitly stated that he was being treated for substance abuse and detoxification.  Specifically Cassandra Carson's email address, Cassandra.Carson@starliterecovery.com implicated her employment with a "recovery" center.[B]  In an FMLA eligibility form, which was also sent by Defendant to the ISD on January 8, 2019, Dr. Davis listed his Type of Practice/Medical Specialty as "Family Medicine/Addiction."[C]  He described Plaintiff's treatment as follows:

> "Client will participate in a full medical detox, individual and group counseling, 12-step and relapse prevention classes, and aftercare planning to determine need for IOP and/or individual counseling."[D]

The Physical Examination note made reference to "methamphetamine,"[E] and "Illicit Drugs: meth."[F]

10.      None of the foregoing communications were made with Plaintiff's consent, express or implied.  To the contrary, the communications were made in violation of Defendant's representation and pledge of confidentiality contained in Exhibit A to this complaint.

*Plaintiff's Original Complaint and Jury Demand*                                                    *3*

11.     On or about January 9, 2019 Plaintiff was called into Cassandra Carson's office at SRC and told he had to make a telephone call.  He was not told to whom or why he was making the call.  Cassandra Carson dialed the number and put the telephone on speaker.  Only then did Plaintiff learn that he was speaking to the Assistant Superintendent of the ISD where he was employed.

12.     In the course of a difficult conversation, the administrator informed Plaintiff he knew Plaintiff was in a rehabilitation facility being treated for illicit or illegal substance abuse and detoxification.  The administrator had, in fact, obtained that information from the documents Defendant's staff sent to Plaintiff's employer prior to the January 9, 2019 telephone call.  As a result of Defendant's disclosures of Plaintiff's private health information to his employer, the Assistant Superintendent was able, with the whispered assistance of Cassandra Carson to extract Plaintiff's verbal affirmation that he was in treatment for illegal drug abuse and detoxification, and that he had used an illegal stimulant before the Christmas break but never during school hours.  The administrator immediately told Plaintiff he was recommending that Plaintiff's employment be terminated and ended the conversation.  On or about January 29, 2019 Plaintiff, on the advice of counsel, elected to resign in lieu of termination.[G]

13.     As a result of Defendant's disclosure of his private health information to his employer, Plaintiff has suffered, and will, for an indefinite time in the future, if not for the rest of his life suffer physical pain, mental anguish, severe emotional distress, and injury to his earning capacity.

**E.  Legal Principles.**

**E. i.     Negligence.**

14.     Defendant owed a professional and legally enforceable duty to protect Plaintiff's privacy, including but not limited to his private health information.  Defendant knew, or in the exercise of minimally acceptable care should have known that dissemination of Plaintiff's private health information regarding his treatment for substance abuse and detoxification would cause irreparable injury to his professional reputation, physical, and mental health.  Defendant failed to exercise ordinary care in the handling and dissemination of Plaintiff's private health information.  Such failure was negligence, which negligence was a direct and proximate cause of injury and legal damage to Plaintiff.

**E. ii.   Negligence Per Se, Unauthorized Disclosure.**

15.     Unauthorized disclosure of a person's private health information to his employer likewise constitutes violation of the Privacy Rule of the HEALTH INSURANCE PORTABILITY AND PRIVACY ACT, (HIPAA), 42 USC, §1320d-6, et seq. This rule is further embodied in the CODE OF FEDERAL REGULATIONS at 45 CFR §164.400, et seq. The rule and these regulations are intended to protect the privacy of patients' medical conditions and records.  Plaintiff is an intended beneficiary of the statute and regulations, the breach of which constitutes negligence *per se*, which was a direct and proximate cause of injury and legal damage to Plaintiff.

**E. iii.   Breach of Contract**.

16.     In consideration of Plaintiff's agreement to pay Defendant for their services rendered, Defendants agreed, both expressly and by implication to maintain confidentiality of his private health information.  Defendant's disclosure of Plaintiff's private health information to his employer, the ISD, was in breach of the parties' express and implied agreement, which breach was a direct and proximate cause of injury and legal damage to Plaintiff.

**E. iv.   Invasion of Privacy**.

17.     Defendant knowingly, willfully, or intentionally communicated Plaintiff's private health information to his employer, the ISD, in violation of Plaintiff's common law right be free from intrusion into or publicity concerning matters of a personal nature.  Such invasion of Plaintiff's common law right of privacy was a direct and proximate cause of injury and legal damage including past and future physical pain, mental anguish, severe emotional distress, and injury to earning capacity.

**E. v.     Tortious Interference**.

18.     Defendant knew or should have known that communication of Plaintiff's private health information to his employer would damage his contractual and professional relationship with that employer, the ISD.  Defendant intentionally communicated Plaintiff's private health information to his employer, which communication directly and proximately caused injury and legal damage to Plaintiff's contractual and professional relationship with his employer, including past and future physical pain, mental anguish, severe emotional distress, and injury to earning capacity.

**E. vi.    Intentional Infliction of Emotional Distress**.

19.     Conduct is "outrageous" if it surpasses "all possible bounds of decency," such that it is "utterly intolerable in a civilized community." RESTATEMENT (SECOND) TORTS, §46, Comment d.  Liability for outrageous conduct is recognized in the common law where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which a recitation of the facts to an average member of the community would lead him to exclaim, "Outrageous!"  Defendant's communication of Plaintiff's private health information to his employer was outrageous as that term is understood

in law and constitutes the intentional infliction of emotional distress.  Such outrage was a direct and proximate cause of injury and legal damage to Plaintiff, including past and future physical pain, mental anguish, severe emotional distress, and injury to earning capacity.

**E. vii.  Gross Negligence.**

20.        "Gross negligence" means an act or omission:

(A)  which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(B)  of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Texas CIVIL PRACTICE & REMEDIES CODE, §41.001 (11).

21.    In communicating Plaintiff's private health information to his employer, Defendant was grossly negligent as that term is defined in Chapter 41 of the REMEDIES CODE. Such gross negligence was a direct and proximate cause of injury and legal damage to Plaintiff, including past and future physical pain, mental anguish, severe emotional distress, and injury to earning capacity.

**E. viii.  Fraud.**

22.    Upon his admission to Starlite, Defendant represented to Plaintiff, both expressly and by implication that his private health information, including medical records would be held in strict confidence and not disclosed to strangers without his consent.  Defendant's representation was false, and Defendant knew it was false at the time it made the representation.

23.    Plaintiff relied on Defendant's representation that it would hold his private health information, including medical records in strict confidence.  Defendant knew Plaintiff was relying on that representation because he stressed his concern with confidentiality to the intake

staff on admission.  Additionally, Defendant knew, through years of practice, that virtually all is patients/clients want their treatment for drug and alcohol abuse and other private health information to remain confidential.

24.     In addition to its written representation of confidentiality Defendant's intake personnel verbally reassured Plaintiff that his medical records and private health information would, indeed, be held in strict confidence.  Plaintiff would not have voluntarily admitted himself to Defendant's facility without the representations of confidentiality.  He would have searched out a treatment facility that purported to act in accord with the Hippocratic Oath.

25.     Defendant's misrepresentations regarding confidentiality of Plaintiff's medical records and private health information constitute fraud as that term is defined in §41.001 (6), CPRC.  Defendant's fraud on Plaintiff was a direct and proximate cause of injury and legal damage to Plaintiff, including past and future physical pain, mental anguish, severe emotional distress, and injury to earning capacity.

### F.     Remedies and Damages.

26.     Defendant's negligence, negligence per se, breach of contract, invasion of privacy, tortious interference, intentional infliction of emotional distress, gross negligence, and fraud have been a direct and proximate cause of legal injury and damage to Plaintiff.  Plaintiff sues to recover reasonable compensation for his injuries and damages caused by Defendant's civil wrongs hereinabove alleged in amounts as found by the jury.

27.     Because Defendant was grossly negligent and defrauded Plaintiff N.N. sues to recover an award of exemplary damages in an amount found by the jury, having given due consideration to:

(a) the nature of the wrong;

(b) the character of the conduct involved;

(c) the degree of culpability of the wrongdoer;

(d) the situation and sensibilities of the parties concerned;

(e) the extent to which such conduct offends a public sense of justice and propriety; and

(f) the net worth of the defendant.

24.     Plaintiff sues to recover his costs of court.

**G.     Jury Demand.**

28.      Plaintiff demands a trial by jury.

**I.      Prayer**

29.     Premises considered, Plaintiff prays that Defendant be cited to appear and answer herein in the terms of the law; that upon final jury trial, plaintiff have judgment of and from defendants, jointly and severally, for the full amount of his actual and exemplary damages, as herein alleged, together with pre-judgment and post-judgment interest, his costs of court, and such other and further relief as the court may deem proper.

Respectfully Submitted,



THE COMMISSIONERS HOUSE AT HERITAGE SQUARE
2901 Bee Cave Road, Box L
Austin, Texas 78746
Phone: (512) 328-9099
Facsimile No. (512) 328-4132
Email: jjudge@jkplaw.com
ATTORNEYS FOR PLAINTIFF

John Judge
State Bar No. 11044500

*Plaintiff's Original Complaint and Jury Demand*                                    *9*

---

[A] STARLITE -- 000014
[B] NN – 00004
[C] NN – 00005
[D] NN – 00006
[E] NN – 00009
[F] NN – 00010
[G] NN – 00003

**EXHIBIT A**

SRC Policy and Procedure
Nursing Assessment 2018



**Doctors H&P**

**Lacerations:**

**1. Location:** R    L _____ cm
Type: Aculsion   Flap   Linear   Jagged   Stellate   Irregular _____
Through to T&T:        Skin        Mucosa        SQ   Muscle   Tendon   Fascia
Bone   Vermillion border        Joint
Foreign Body: _____        Tendon Injury %:   25   50   75   100
Distal Function:        Deficits:        Motor   Sensory   Pulse   Capillary refill   Normal

**2. Location:** R    L _____ cm
Type: Avulsion   Flap   Linear   Jagged   Stellate   Irregular _____
Through to T&T:        Skin        Mucosa        SQ   Muscle   Tendon   Fascia
Bone   Vermillion border        Joint
Foreign Body: _____        Tendon Injury %:   25   50   75   100
Distal Function:        Deficits:        Motor   Sensory   Pulse   Capillary refill   Normal

**Skin:** _____ Normal

**Physician Signature**                **Date** 12/23/18

| Name | Sex | DOB | Allergies | Admit Day | MR # | DR |
|------|-----|-----|-----------|-----------|------|-----|
|      | M   |     | NKDA      | 12-22-18  |      | Dr. Davis |

**EXHIBIT B**

**Cassandra Carson**

---

| | |
|---|---|
| **From:** | Cassandra Carson |
| **Sent:** | Tuesday, January 08, 2019 11:17 AM |
| **To:** | 'Bane, Tanya' |
| **Subject:** | RE: N        I |
| **Attachments:** | "RNP002673D07068" |

Tanya,

Please see the attached completed forms as requested.

Thank you,

Cassandra Carson, LVN

**From:** Bane, Tanya [mailto:Tanya.Bane@bisd.net]
**Sent:** Tuesday, January 08, 2019 9:13 AM
**To:** Cassandra Carson <Cassandra.Carson@starliterecovery.com>
**Subject:** RE:

**WARNING:** This email originated from outside of **Acadia Healthcare's** email system. Please use **CAUTION** when clicking links, opening attachments, or providing information unless you recognize the sender and know the content is safe.

---

**From:** Bane, Tanya
**Sent:** Tuesday, January 8, 2019 9:11 AM
**To:** 'Cassandra.Carson@starliterecovery.com'
**Subject:**

Here is my email

Tanya Bane
Human Resources
Employee Benefits Coordinator
Ph: 254-215-2019
Fax: 254-215-2038

Non-Discrimination and Website Accessibility Statement Belton ISD does not discriminate on the basis of race, color, national origin, sex, religion, disability, age, or any other basis prohibited by law in its programs, activities, or employment practices. For inquiries regarding the non-discrimination policies, contact: Assistant Superintendent of Human Resources, (254) 215-2015, or Executive Director of Special Programs, (254) 215-2112, 400 N. Wall St., Belton, TX 76513. Belton ISD affirms its commitment to ensure that people with disabilities have an equal opportunity to access online information and functionality. For assistance accessing any online information or functionality that is currently inaccessible, contact: Coordinator of Public Information and Legal Services, (254) 215-2067; or to file a formal grievance under Section 504 and Title II, contact: Executive Director of Special Programs, (254) 215-2112, 400 N. Wall St., Belton, TX 76513

NN - 000004

**EXHIBIT C**

## Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act)

**U.S. Department of Labor**
Wage and Hour Division



| DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR; RETURN TO THE PATIENT | OMB Control Number: 1235-0003 Expires: 7/31/2018 |
|---|---|

**INSTRUCTIONS to the EMPLOYER:** The Family and Medical Leave Act (FMLA) provides that an employer may require an employee seeking FMLA protections because of a need for leave due to a serious health condition to submit a medical certification issued by the employee's health care provider. Please complete Section I before giving this form to your employee. Your response is voluntary. While you are not required to use this form, you may not ask the employee to provide more information than allowed under the FMLA regulations, 29 C.F.R. §§ 825.306-825.308. Employers must generally maintain records and documents relating to medical certifications, recertifications, or medical histories of employees created for FMLA purposes as confidential medical records in separate files/records from the usual personnel files and in accordance with 29 C.F.R. § 1630.14(c)(1), if the Americans with Disabilities Act applies, and in accordance with 29 C.F.R. § 1635.9, if the Genetic Information Nondiscrimination Act applies.

Employer name and contact: BELTON ISD 254-215-2018 FAX 254-215-2038

Employee's job title: _____     Regular work schedule: M-F 7:30-4:30

Employee's essential job functions: _____

_____

Check if job description is attached: ✓

**INSTRUCTIONS to the EMPLOYEE:** Please complete Section II before giving this form to your medical provider. The FMLA permits an employer to require that you submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to your own serious health condition. If requested by your employer, your response is required to obtain or retain the benefit of FMLA protections. 29 U.S.C. §§ 2613, 2614(c)(3). Failure to provide a complete and sufficient medical certification may result in a denial of your FMLA request. 29 C.F.R. § 825.313. Your employer must give you at least 15 calendar days to return this form. 29 C.F.R. § 825.305(b).

Your name: _____     _____     _____
First                             Middle                      Last

**INSTRUCTIONS to the HEALTH CARE PROVIDER:** Your patient has requested leave under the FMLA. Answer, fully and completely, all applicable parts. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your best estimate based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage. Limit your responses to the condition for which the employee is seeking leave. Do not provide information about genetic tests, as defined in 29 C.F.R. § 1635.3(f), genetic services, as defined in 29 C.F.R. § 1635.3(e), or the manifestation of disease or disorder in the employee's family members, 29 C.F.R. § 1635.3(b). Please be sure to sign the form on the last page.

Provider's name and business address: Dr.Bryan Davis 230 Mesa Verde Dr. East Center Point TX, 78010

Type of practice / Medical specialty: Family Medicine/Addiction

Telephone: ( 830 ) 634-2212          Fax:( 830 )634-7820

Page 1                                                                      Form WH-380-E Revised May 2015

**EXHIBIT D**

## PART A: MEDICAL FACTS

1. Approximate date condition commenced: 12/22/2018

   Probable duration of condition: 30-35 days

   **Mark below as applicable:**
   Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility?
   ___No  ✓ Yes. If so, dates of admission:

   12/22/18 -

   Date(s) you treated the patient for condition:

   12/22/18 -

   Will the patient need to have treatment visits at least twice per year due to the condition? ✓ No ___ Yes.

   Was medication, other than over-the-counter medication, prescribed? ___No ✓ Yes.

   Was the patient referred to other health care provider(s) for evaluation or treatment (e.g., physical therapist)?
   ✓ No ____Yes. If so, state the nature of such treatments and expected duration of treatment:

2. Is the medical condition pregnancy? ✓ No ___Yes. If so, expected delivery date: _____

3. Use the information provided by the employer in Section I to answer this question. If the employer fails to provide a list of the employee's essential functions or a job description, answer these questions based upon the employee's own description of his/her job functions.

   Is the employee unable to perform any of his/her job functions due to the condition: ____ No ✓ Yes.

   If so, identify the job functions the employee is unable to perform:

   Unable to work due to 30-35 day stay at inpatient facility.

4. Describe other relevant medical facts, if any, related to the condition for which the employee seeks leave (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment):

   Client will participate in a full medical detox, individual and group counseling, 12-step and relapse

   prevention classes, and aftercare planning to determine need for IOP and/or individual counseling.

NN - 000006

**EXHIBIT E**

SRC Policy and Procedure
Nursing Assessment 2018

## Physical Examination

B. P.: _130/92_   Temp. _98.1_   Pulse: _100_   Sats. _96_ %

Height: _6'1"_   Weight: _165_   Ambulatory: (Yes) No

Comments: _3870 male smoking methamphetamine x3 mo. of legal. Married. nervous. Teeth/coach_

## Diagnosis:

Primary: _Methamphetamine use d/d given_

: _____

: _____

: _____

## Mental Status

| | |
|---|---|
| Appearance | Neat/ groomed; Disheveled; Dirty; Attention-drawing; Bizarre <br> Note: |
| Consciousness | Alert; Hyperalert; Drowsy; Lethargic; Intoxicated/ sedated <br> Note: |
| Orientation/ Memory | Person; Place; Time; Day; Situation    Recent    Intermediate    Remote <br> Note:                                         Note: |
| Ideation | Goal-oriented; Logical; Rapid; Rambling; Tangential; Suspicious; Blocking; Impoverished; Poor-historian; <br> Note: |
| Speech | Clear; Slurred; Deliberate; Abrupt; Rapid; Pressured; Loud <br> Note: |
| Pathological Phenomena | Hallucinations: Visual, Auditory; Command; Delusions; Ideas of reference; Persecutory <br> Note: |
| Mood | Calm; Polite; Euphoric; Anxious; Irritable; Hostile; Depressed; Demanding <br> Note: |
| Suicidal Ideation | In past? Ever attempted? Current? Current plan?  Means? <br> Note: |
| Behavior Risk | Runaway; Wandering; Self-harm; Assault <br> Note: |

_____   _____   12/23/11

**Physician Signature**                    **Date**                                1

| Name | Sex | DOB | Allergies | Admit Day | MR # | DR |
|---|---|---|---|---|---|---|
| | M | | NKDA | 12-22-18 | | Dr. Davis |

**EXHIBIT F**

SRC Policy and Procedure
Nursing Assessment 2018

# Doctor's H&P

| PMH: | | |
|---|---|---|
| | **Systemic:** HTN   DM   Cancer   HIV   Thyroid   Anemia   High Lips | |
| | **Neuro:**   CVA   Seizures | |
| | **Heart:**   MI   Angina   CHF   CAD   Afib | |
| | **Lungs:**   COPD   Asthma GI: | |
| | **PUD   GERD   Liver GU:** | |
| | **UTI's   Stones** | |
| | **MS:**   Arthritis | |
| | **Psych:**   Depression   Anxiety   Schizophrenia   None | |
| | **Operations:**   Appendectomy   Cholecystectomy   FTCA   CABG_____   None | |
| | **Other:** | |

FH: No Significant FH X   HTN   DM   Cancer   Stroke   Heart   Lung   Liver   Kidney   Aneurysm   Coagulopathy   Sudden death

SH:
**Smoke:**   Current   Past   Second Hand   Never
**ETOH:**   Social   Abuse   Alcoholic   None
**Illicit drugs:**_____   None
**Lives with:**   Mom   Dad   Spouse   Family   SO   Alone
**Lives in:**   Home   Assisted care   Homeless   Nursing Home
Single   Married   Divorced   Separated   Widowed

## Review of Systems

**Constitutional:**   None
Fever   Chills   Weakness   Fatigue   Loss of Appetite

**Eyes:**   None
Blurred Vision   Diplopia   Discharge   Photophobia   Redness   Pain

**ENT:**   None
**Ears:**   Pain   Hearing Loss
**Nose:**   Congestion   Bleeding
**Throat:**   Pain   Swelling

**Physician Signature** _____

**Date** 12/23/18

2

| Name | Sex | DOB | Allergies | Admit Day | MR # | DR |
|---|---|---|---|---|---|---|
| | M | | NKDA | 12-22-18 | | Dr. Davis |

NN - 000010

**EXHIBIT G**

January 29, 2019

:

Belton ISD

Dear

      I hereby resign as a teacher and coach for Belton ISD, effective as of the date of this letter. Thank you for opportunity to work with the students, staff and patrons of Belton ISD for the past two years.

                            Sincerely,